IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 11** |
| | ) | |
| **M & M ENTERPRISES, INC.** | ) | **CASE NO. 10-70468** |
| | ) | |
| **Debtor.** | ) | |

## MEMORANDUM DECISION

Before the Court is the Debtor's Objection to Claim Number 5 (the "Objection") filed by the Department of the Treasury - Internal Revenue Service (the "IRS"). By agreement the parties have narrowed the Objection to four discrete issues dealing with the extent of the IRS's tax lien on the Debtor's bank accounts and certain pre-petition accounts receivable.

The Debtor initially filed the Objection on June 3, 2011, to which the IRS responded on July 5, 2011. At the July 20, 2011 hearing for this matter, a discovery schedule was discussed and subsequently established by a Scheduling Order issued by this Court. All discovery was to be completed by August 31, 2011 and the final pre-trial conference was to be held by telephone conference on September 13, 2011. The pre-trial conference was continued three times, each time at the request of counsel for the parties, first to a telephone conference on September 27, 2011, then to another telephone conference on October 3, 2011, and finally to a hearing on October 19, 2011. Counsel have utilized these continuances to exchange documentation about the Debtor's finances and transactions in an attempt to resolve the Objection. At the October 19 hearing the parties outlined the remaining issues and agreed to

1

submit the Stipulation of Facts and Issues to be Decided[1] detailed below. Both parties then filed Memoranda of Authority on November 9, 2011 and responsive briefs on November 14, 2011.

## STIPULATION OF FACTS[2]

1. Notices of federal tax lien were filed July 7, 2009 in Wise County, Virginia and with the Virginia State Corporation Commission in the amount of Fifty Four Thousand Five Hundred Five Dollars and Sixty Eight Cents, ($54,505.68). Additional notices of federal tax liens were filed following that date.
2. At the time of bankruptcy the Debtor has two (2) bank accounts, account number 1900463 and 1900489, both at Powell Valley National Bank.
3. The balances of the two accounts at the time of the filing of the Debtor's bankruptcy were:
   Account No: 1900463      $6,164.57
   Account No: 1900489      $5,209.51

## ISSUES TO BE DECIDED

1. Did the United States' federal tax lien attach to the Debtor's bank accounts?
2. Is Debtor's bank account # 1900489, held at Powell Valley National Bank, a payroll account, and, if so, does its status as a payroll account prevent the United States' federal tax lien from attaching to the account?
3. If the United States' federal tax liens did attach to the Debtor's bank account(s), should the United States be secured by the value of the accounts at the time of the filing of the petition, or should the value of the bank account(s) be reduced by any checks which were issued prior to the filing of the petition, but which cleared the bank after the filing of the petition.
4. Is the United States' claim secured by the as yet uncollected accounts receivable which arose from pre-petition invoices issued in January and February 2010, and, if so, to what extent?

## SUPPLEMENTAL UNDISPUTED FACTS

In addition to the Stipulation of Facts submitted by the parties, it is evident from their memoranda that there are certain additional facts which are not in dispute. The Debtor

---

[1] Docket entries # 139, 140. These were filed on November 3, 2011.

[2] It has become apparent to the Court that the facts stipulated are not sufficiently detailed for the proper determination of the issues which the parties have requested be decided.

issued some checks prior to filing for bankruptcy which had not cleared the relevant account(s) by that time but were subsequently honored during the course of the bankruptcy case. The number of checks issued as well as the amount of money which was paid from the account(s) post-petition have not been indicated by either party. In addition, the Debtor has accounts receivable from the months of January and February 2010 upon which the IRS has a lien but which remain uncollected to an unknown extent.[3]

## CONTENTIONS OF THE PARTIES

In its Memorandum of Authority, the Debtor concedes that under 26 U.S.C. § 6321 the IRS's tax lien did create a lien on the bank accounts, but then argues that this lien is junior and inferior to the holders of checks which had been issued by the Debtor pre-petition and were outstanding at the time the Debtor filed its bankruptcy petition on February 26, 2010. The Debtor states that there is an exception to the tax lien under § 6323 which applies to "purchasers" of "securities" under applicable definitions and case law.[4] The Debtor then requests a supplemental evidentiary hearing to prove that the trade vendors and employees holding the checks are purchasers of such securities for purposes of § 6323 and thus qualify for the exception. The Debtor argues that the checks in question, issued pre-petition but not honored until post-petition, were given in exchange for consideration from the trade vendors and that

---

[3] These accounts receivable were part of the Court's Order entered on April 19, 2010 permitting the Debtor to use cash collateral of the estate. The Debtor was permitted to use all funds derived from certain accounts receivable, including those arising from the months of January and February 2010, and in exchange the Debtor was ordered to grant a corresponding post-petition security interest and to "repay the cash collateral by paying three hundred dollars ($300.00) a month, on the 15th of each month to the United States of America . . . until the amount of pre petition receivables is repaid."

[4] 26 U.S.C. §§ 6323(b)(1)(A).

3

they, along with the checks to employees, should be deducted from the amount in the bank account thereby reducing the amount covered by IRS's tax lien.

The Memorandum of Authority provided by the IRS aligns more closely with the Issues to be Decided. The IRS first states that tax liens arise under § 6321 and have a very broad reach, and that it has a valid and perfected tax lien on the Debtor's personal property, including its bank accounts. It also points out that the pre-petition checks were honored post-petition with funds from the bankruptcy estate, and that this was done without Court permission. As a result, the IRS claims that the diminution of the accounts' value should not affect its secured claim. As for whether one of the Debtor's bank accounts is actually a payroll account and not within the purview of the tax lien, the IRS argues that money held in a bank account in the name of the Debtor is presumed to be property of the bankruptcy estate and that the Debtor bears the burden of proving the existence of a trust. The IRS also alleges that at least four checks drawn on the account for the benefit of Trane, Coastal Supply (two checks), and Jack Rabbit Printing do not appear to be for payroll purposes, and that the payment of these non-payroll expenses from account # 1900489 means that it should not be labeled as a payroll account. The IRS then addresses the question of the pre-petition checks by stating that the funds in the Debtor's bank account as of the commencement of the case are part of the bankruptcy estate. Citing *Barnhill v. Johnson*, 503 U.S. 393 (1992), and *In re Brubaker*, 426 B.R. 902 (Bankr. M.D. Fla. 2010), aff'd *Brubaker v. Jensen (In re Brubaker),* 443 B.R. 176 (M.D. Fla. 2011), the IRS contends that a transfer of property did not occur at the time the checks were created, which occurred pre-petition, but instead at the time they were honored, which occurred post-petition. Consequently, the IRS believes that the value of the Debtor's bank accounts as of the time of filing should be

4

the amount securing the IRS's claim. Finally, regarding the uncollected accounts receivable from January and February 2010, the IRS argues that as the Debtor has not abandoned these particular accounts receivable and because, it asserts, its lien has priority over Hajoca Corporation (formerly known as HD Supply Plumbing/HVAC, L.P.), its claim is secured by this collateral.

    The Debtor responded in its Reply Memorandum, repeating its request for additional evidence to be admitted in this matter. The Debtor first stated that there is no dispute as to whether the tax lien exists on the Debtor's property. The Debtor then admits that it has the burden to establish that the payroll account was intended to be used as a payroll account, but adds that the Court cannot determine this issue without further evidence. Agreeing that commingling of payroll and non-payroll monies would destroy the trust status of the claimed payroll account, the Debtor alleges that there is no evidence that the checks reveal such commingling. The Debtor next discusses the issue of the checks outstanding at the time of filing, and states that as negotiable instruments under Virginia law, the holders of such instruments are protected from the IRS's tax lien. Though the honoring of the checks may constitute a recoverable post-petition transfer under 11 U.S.C. § 547, the Debtor argues that the property transferred is nevertheless exempted from the IRS's tax lien. Finally, the Debtor alleges that the uncollected accounts receivable have no value, and that the Debtor will abandon these accounts receivable to allow the IRS to attempt to collect on them.

    The IRS also filed its Response to Debtor's Memorandum of Authority Regarding Debtor's Objection to Claim #5. The sole argument made by the IRS is that the Debtor has the burden to show that the holders of the pre-petition checks, as purchasers under § 6323, did not

have notice or knowledge of the tax lien and further that they obtained a valid interest in the property in exchange for consideration. The IRS contends that unless the Debtor can meet its burden of proof, its arguments should be rejected.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this case by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The Objection is a "core" bankruptcy matter pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (K) because it seeks to disallow part of the IRS's secured claim and determine the extent and relative priority of the IRS's lien.

The tax lien claimed by the IRS arises by virtue of 26 U.S.C. § 6321, which provides as follows:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Such a lien on personal property is effective against certain competing creditors, however, only if proper notice of its existence is given in the manner prescribed by the law of the state which is the residence of the taxpayer at the time the notice of the lien is filed. *See* 26 U.S.C. §§ 6323(a), (f). The pertinent statutory language in subsection (f) reads as follows:

> The notice referred to in subsection (a) shall be filed . . . [i]n the case of personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated, except that State law merely conforming to or reenacting Federal law establishing a national filing system does not constitute a second office for filing as designated by the laws of such State . . . .

26 U.S.C. § 6323(f)(1)(A)(ii). The IRS asserts that it has complied with the statutory

requirements in Virginia to perfect its tax lien, specifically Va. Code § 55-142.1(b).  The Debtor has not disputed the general validity of the IRS's tax lien but primarily argues that other provisions within § 6323 make the lien not valid as against certain of its creditors holding checks written on the Debtor's account(s) before the bankruptcy petition was filed but which did not clear the account(s) until afterwards.  The statutory provision which the Debtors rely upon to reduce the amount of the secured portion of the tax lien by the aggregate amount of the checks is § 6323(b)(1)(A), which reads as follows:

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid . . . with respect to a security (as defined in subsection (h)(4)) . . . as against a purchaser of such security who at the time of purchase did not have actual notice or knowledge of the existence of such lien . . . .

The definition of a "security" is then provided at § 6323(h)(4):

> The term "security" means any bond, debenture, note, or certificate or other evidence of indebtedness, issued by a corporation or a government or political subdivision thereof, with interest coupons or in registered form, share of stock, voting trust certificate, or any certificate of interest or participation in, certificate of deposit or receipt for, temporary or interim certificate for, or warrant or right to subscribe to or purchase, any of the foregoing; negotiable instrument; or money.

The filing of a bankruptcy petition creates an estate "comprised of all of the following property, wherever located and by whomever held: (1) . . . [subject to certain exceptions] all legal and equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  In short, the bankruptcy estate comes into existence and is determined as of the commencement of the case.  Against the bankruptcy estate thereby arising a "creditor . . . may file a proof of claim."  11 U.S.C. § 501(a).  If any objection is filed to any such proof of claim, the bankruptcy court, "after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of filing the petition[.]"  11

7

U.S.C. § 502(b). The claim shall be disallowed, however, among other specified reasons, "to the extent that – (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]" 11 U.S.C. § 502(b)(1).

With these statutory provisions as its guiding star, this Court will turn to the issues to be determined.

1. Did the United States' federal tax lien attach to the Debtor's bank accounts?

The Debtor concedes and correctly so that the tax lien did attach to the Debtor's general bank account, which is account # 1900463.[5] The applicability of the lien to the other bank account, which the Debtor claims is a payroll account, is considered in the following question.

2. Is Debtor's bank account # 1900489, held at Powell Valley National Bank, a payroll account, and, if so, does its status as a payroll account prevent the United States' federal tax lien from attaching to the account?

The parties appear to agree that if the money in this account represents funds owing to employees for wages earned it will not be subject to the tax lien unless payroll and non-payroll funds have been commingled in the account.[6] Counsel for the IRS references the four checks previously noted which it argues were written against the account to payees other than employees of the Debtor. These alleged payments, however, are not part of the stipulated facts

---

[5] "The Debtor . . . concedes that the filing of the lien created a lien upon any funds due to the debtor from Powell Valley Nat'l Bank." Debtor's Memorandum of Authority, docket # 141.

[6] "Also, in general, the Debtor does not disagree that a general commingling of the account would destroy its trust basis[.]" Debtor's Reply Memorandum, docket # 145.

8

offered to the Court and the Debtor asserts that "there is no evidentiary record to indicate that these . . . checks were at a time or for an amount that was not part of a trust corpus." Therefore, it contends "without further hearing, the Court cannot resolve this issue." Counsel for the Debtor does not make any proffer, however, of a factual explanation for these checks having been written on this account that would blunt the IRS's contention that the account obviously must have been utilized for a purpose other than satisfaction of payroll liability. The Court concludes that it does not have sufficient information before it to make an informed determination of this dispute between the parties.

> 3. If the United States' federal tax liens did attach to the Debtor's bank account(s), should the United States be secured by the value of the accounts at the time of the filing of the petition, or should the value of the bank account(s) be reduced by any checks which were issued prior to the filing of the petition, but which cleared the bank after the filing of the petition.

The Court concludes that the law is clear that the bankruptcy estate includes the full balance of any non-payroll or other non-trust bank account owned by the bankruptcy debtor as of the commencement of the bankruptcy case. *Barnhill*, 503 U.S. at 400 (in a preference action, payment date is when the drawee bank honors the check, not when the check is delivered to the payee); *In re Yoon,* 399 B.R. 34, 42-44 (N.D. Ind. 2008) (funds subject to trustee's turnover motion are funds on deposit at time of filing without reduction for pre-petition checks honored post-petition)*; In re Brubaker*, 426 B.R. at 907 (same); *In re Parker,* 2008 Bankr. LEXIS 1046, 2008 WL 906570 (Bankr. N.D.N.Y. Apr. 3, 2008) (same). Even though any such general bank account may have been depleted very quickly after the time of filing by the clearing of pre-petition checks written against it, such post-petition events do not alter the legal status of the estate created at the time of filing. Immediately thereafter the Debtor could have instructed

9

its bank not to honor any pre-petition checks thereafter presented to be paid or it could have closed out the account and transferred its full available balance to a new debtor-in-possession bank account.  While the parties have not presented any authority directly on point with respect to a pre-petition federal tax lien against a bank account from which after filing pre-petition checks were honored, the Court concludes that the status existing as of the time of filing is determinative.  Even if the payees of these checks honored after filing would have a defense by virtue of § 6323(b)(1)(A) to the IRS's enforcement of its lien against them outside of bankruptcy, the Court concludes that such fact would not affect the amount of the government's secured claim against the bankruptcy estate "as of the date of filing" under § 502(b) of the Bankruptcy Code.  Even if an argument might be advanced that the lien was not enforceable against certain property of the Debtor (i.e., the funds on account covering the a pre-petition checks) under the language of § 502(b)(1), the Court concludes that no reasonable case can be made that such lien was not enforceable "against the [D]ebtor" or other property of the Debtor as would be necessary to come within the safe harbor exception provided by such sub-section. While this ruling may result in some hardship to the Debtor in trying to deal with the amount of the IRS's secured claim, any injury is in some sense self-inflicted because M&M did not take immediate action at the time of filing its petition to secure the bankruptcy estate created by § 541 of the Bankruptcy Code.

    4.        Is the United States' claim secured by the as yet uncollected accounts receivable which arose from pre-petition invoices issued in January and February 2010, and, if so, to what extent?

The Court believes that the wording of this question somewhat confuses the actual issue presented by these yet uncollected and perhaps uncollectible accounts receivable of

the Debtor as of the filing. Clearly any pre-petition lien against specific accounts receivable in existence as of the time of filing would continue to exist against such accounts after that filing occurred. The pertinent question with respect to the Objection to the secured amount of the IRS claim, however, is what was the aggregate value of such accounts as of the time of filing? That value is not necessarily simply their face value even though that intuitively might seem to be the answer for specific undisputed and liquidated accounts payable in United States dollars. It is common for accountants conducting an audit of a firm's financial standing to reduce the value of accounts receivable to reflect the risk of non-collectibility and/or expense of and delay in collection. The longer an account has been unpaid, the greater the discount from face value to arrive at a net amount reflecting the true "value" of the account as of any particular point in time. Obviously on the facts presented to the Court at this point, it has no basis upon which it might support a factual finding as to the value of the accounts in question as of the time this case was commenced.

It is apparent that the proper amount of the IRS's secured claim against the Debtor cannot be determined without either additional stipulated facts or an evidentiary hearing. Accordingly, the Court will endeavor to schedule such a hearing as soon as practicable which is reasonably convenient to the parties and their counsel.

The Clerk is directed to send a copy of this Memorandum Decision to each of the following: the Debtor; Robert T. Copeland, Esq., counsel for the Debtor; Timothy J. Heaphy, Esq. and Christopher W. Sanders, Esq., counsel for the IRS; the Office of the United States Trustee for the Western District of Virginia; Maximilian R. Loosen, Esq., counsel for Hajoca Corporation; and to any other party in interest that has filed a request to receive notice in this

case.

        This 18th day of November, 2011.

                                      /s/ William F. Stone, Jr.
                              UNITED STATES BANKRUPTCY JUDGE